IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JERRY A. BYRD, SR.,                )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    1:05CV417
                                    )
CARNIVAL CORPORATION d/b/a          )
CARNIVAL CRUISE LINES,              )
                                    )
            Defendant.              )

MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss and for Summary Judgment or, Alternatively, to Transfer Venue [Document #9], which seeks to transfer this case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1406(a) and based upon a forum-selection clause contained in a contract between the parties. For the reasons discussed below, Defendant's Motion to Dismiss will be granted, and in the interest of justice the Court will transfer the action as requested.

I.      FACTUAL BACKGROUND

Plaintiff Jerry A. Byrd, Sr. ("Mr. Byrd") is a North Carolina citizen who booked (and went on) a seven-day Eastern Caribbean Cruise on the Carnival Cruise Lines ("Carnival" or "Defendant") ship "PRIDE." Mr. Byrd booked his cruise through an independent travel agency.

On March 8, 2002, Carnival mailed a passenger ticket to Mr. Byrd via first-class mail. Carnival routinely mails such tickets along with a passenger ticket contract and a boarding pass, as well as other relevant information to the cruise. Passengers may not board Carnival ships without signing their boarding passes. On April 6, 2002, Mr. Byrd signed his boarding ticket, boarded the PRIDE, and began the cruise. The next day, April 7, 2002, while the PRIDE was on the high seas, a storm arose. When the ship "suddenly shifted violently," Mr. Byrd fell down and injured himself. Thus, Mr. Byrd has brought this lawsuit alleging that Carnival was negligent by sailing in such a storm.

Mr. Byrd filed this action on April 7, 2005 in the Superior Court of Surry County, North Carolina. On May 13, 2005, Carnival timely filed a Notice of Removal to this Court. Carnival now urges this Court to dismiss the lawsuit based upon improper venue. Carnival argues that Mr. Byrd accepted Carnival's ticket contract and in doing so accepted Carnival's forum selection clause, which requires all claims for injury to be filed in Miami-Dade County, Florida. Carnival also argues that its contract requires all claims for injury to be brought within one year, so that Mr. Byrd's lawsuit is two years too late.

Carnival states that Mr. Byrd was informed several times concerning the terms and conditions of his ticket, and in particular, the forum selection clause. Carnival notes that it is its normal business practice to send, along with an individual's boarding pass, a ticket contract. This contract states, in applicable part, as follows:

> 14(a). Carnival shall not be liable for any claims whatsoever for

2

personal injury, illness or death of the guest, unless full particulars in writing are given to Carnival within 185 days after the date of the injury, event, illness or death giving rise to the claim. Suit to recover on any such claim shall not be maintainable unless filed within one year after the date of the injury, event, illness or death, and unless served on Carnival within 120 days after filing. Guest expressly waives all other potentially applicable state or federal limitations periods.

15. It is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, USA, to the exclusion of the Courts of any other county, state or country.

Moreover, Carnival states that this language inside the ticket contract was not the only warning to Plaintiff concerning the forum selection clause and limitations period. On the front cover of the ticket contract in 1/8 inch type was this notice in bold, black, capitalized letters:

> IMPORTANT NOTICE TO GUESTS: THE GUEST TICKET CONTRACT IN THIS BOOKLET CONTAINS CONDITIONS ON NUMBERED PAGES 1 THROUGH 11 IN THE REAR PORTION OF THIS BOOKLET. YOUR ATTENTION IS DIRECTED TO THESE CONDITIONS, CERTAIN OF WHICH CONTAIN IMPORTANT LIMITATIONS ON RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST THE CRUISE LINE, VESSEL, OR THEIR AGENTS OR EMPLOYEES. PLEASE READ THE CONTRACT AND THESE TERMS AND RETAIN THE CONTRACT FOR FUTURE REFERENCE.

Additionally, Carnival notes that on Page 1 of Mr. Byrd's ticket itself was this notice in

3

1/16 inch type, also all in bold, black, capitalized letters:

> <u>IMPORTANT NOTICE TO GUESTS</u>
> THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING ON THE FOLLOWING 11 PAGES. THE PROVISIONS ON THE FOLLOWING PAGES OF THIS CONTRACT ARE INCORPORATED AS THOUGH FULLY REWRITTEN ON THE FACE OF THIS CONTRACT. <u>NOTICE:</u> THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1 AND 13 THROUGH 17, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS.

Carnival further asserts that Mr. Byrd had the opportunity to learn the terms and conditions of his ticket through a brochure sent to every passenger prior to a cruise. This "Welcome Aboard" brochure was sent along with the ticket contract and several other items, such as luggage tags. In the Table of Contents on page 4 of the brochure, the first item is entitled "Important Things to Know Before Sailing" and lists "Cruise Contract" as one of these things guests need to be aware of before departure. On page 9 of the brochure, under the title "Conditions of Contract" the document specifically states, "If you look at the cover of your ticket booklet, you will see an 'Important Notice to Guests.' This notice directs your attention to the terms and conditions of your contract. It is important to read this and become acquainted with the specific conditions and limitations of your passage."

Carnival argues that two other important sources of information concerning its terms and

4

conditions were Carnival's website which links to an exemplar of the entire passage ticket contract and a travel brochure given to travel agents which states that "[c]ruise passage is subject to the terms and conditions shown on Carnival Cruise Lines' 'Terms and Conditions of Passage Contract Ticket' (copies available upon request), including the procedure for the resolution of disputes which must take place in Miami-Dade County, Florida." Finally, Carnival notes that Mr. Byrd had previously taken three other cruises upon Carnival ships.

In response, Mr. Byrd states that he never received the passenger ticket contract nor the Carnival brochure, and so was unable to read any of the above cited notices concerning Carnival's forum selection clause. Moreover, he states that had he known of such a contract term, he would not have boarded the PRIDE.

II. STANDARD OF REVIEW

Given that this case involves a passenger ticket on a cruise ship, it involves a maritime contract, and so "the substantive law to be applied is the same as would be applied by an admiralty court – that is, the general maritime law." Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905, 909 (3d Cir. 1988). Accordingly, "federal law governs the enforceability of the forum-selection clause." Carnival Cruise Lines v. Shute, 499 U.S. 585, 590, 111 S. Ct. 1522, 1525 (1991). "[F]orum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." Id. at 595, 111 S. Ct. at 1528. Where fundamental fairness exists, forum selection clauses are to be enforced by district courts sitting in admiralty. Id.; see also Roberson v. Norwegian Cruise Line, 897 F. Supp. 1285, 1288 (C.D. Cal. 1995). In this case,

5

Mr. Byrd has raised the issue of fundamental fairness by denying that he received the passenger ticket contract or the Carnival Cruise brochure, thus he was unable to realize that the contract contained a forum selection clause. However, the Court notes that Plaintiff did sign the Boarding Pass which allowed him to embark upon the PRIDE, and that this signature is to the right of the phrase "I have received, read and agree to the Terms/Conditions of the Ticket Contract." Moreover, even if Mr. Byrd did sign his boarding pass without reading the ticket contract, the Court notes that he had ample opportunity to become informed as to Carnival's terms and conditions during his three previous Carnival cruises, before he purchased the ticket for this cruise, during the 11-week time span between purchasing his ticket and boarding, or in the years following his injury. See Lousararian v. Royal Caribbean Corp., 951 F.2d 7, 11 (1st Cir. 1991) (holding that the critical inquiry is not whether a passenger actually read the ticket contract, but whether the passenger had the *opportunity* to read the ticket contract). Mr. Byrd cannot reasonably assert that he did not have the opportunity to read the ticket contract, particularly as it relates to the forum selection clause, which determines where any claim against Carnival should be filed. Accordingly, the Court finds that Mr. Byrd has failed to raise any issue of fundamental fairness concerning whether the existence of the forum selection clause was reasonably communicated to him, nor has he raised any allegations of fraud or overreaching.

Based upon this finding, the Court finds no reason not to enforce the forum selection clause, see Shute, 499 U.S. at 595, 111 S. Ct. 1528 (enforcing forum selection clause under same situation), and, in the interest of justice, to transfer the lawsuit to the United States District

Court for the Southern District of Florida. See Roberson v. Norwegian Cruise Line, 897 F. Supp. 1285, 1289 (C.D. Cal. 1995); 28 U.S.C. § 1406(a).[1]

III. CONCLUSION

Defendant's Motion [Document #9] is therefore GRANTED as to the Motion to Dismiss and in the "interest of justice" the Clerk of Court for the United States Middle District is directed to transfer the case to the United States District Court for the Southern District of Florida.

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

This, the 16th day of May, 2006.

                                                                                       United States District Judge

---

[1] The Court therefore also finds no reason to address Defendant's alternative motion for summary judgment based upon Defendant's argument concerning the statute of limitations contained in Carnival's contract, given that the Court has deemed that it is not the proper venue where Mr. Byrd may pursue his claim.